# SANDY McMILLAN v. STATE.

No. A-4918.   Opinion Filed July 24, 1925.
(238 Pac. 510.)

Ed Crossland, for plaintiff in error.

The Attorney General and G. B. Fulton, Asst. Atty. Gen., for the State.

DOYLE, J.   The information in this case charged that in Tulsa county, April 9, 1923, Sandy McMillan did have in his possession certain intoxicating liquors, to wit, 23 cases of whisky, with the unlawful intent to sell the same.   On the trial the jury returned a verdict finding him guilty, and fixed his punishment at a fine of $500 and confinement for 6 months in the county jail.   From the judgment rendered on the verdict, he appeals.

Error is assigned because the court refused to quash the information on the ground that the name of the coun-

ty attorney was not subscribed thereto by himself as required by section 2511, C. S. 1921. The information concludes, "John M. Goldesberry, County Attorney, by W. P. Howser, Deputy"; the first name being written with a typewriter, and the second being the pen and ink signature of W. P. Howser. The proof showed that Mr. Howser was a duly appointed assistant, and that the county attorney's name was written on the information by his stenographer at the request of Mr. Howser. It is urged that writing the name of the district attorney with a typewriter does not comply with statute.

"An unqualified reading of the words of the statute would make it necessary for the county attorney himself to subscribe his own name to all informations; but it has been held that the county attorney need not himself subscribe his name to an information, as it is sufficient if it be done by his legally appointed assistant." McGarrah v. State, 10 Okla. Cr. 21, 133 P. 260.

When the county attorney's name is affixed with authority to an information which is signed by his legally appointed assistant, it is a sufficient compliance with the statute. However, the better practice is to sign both names with pen and ink, and the assistant county attorney should designate his office by using the statutory words.

It follows that the defendant's motion was properly overruled.

It is also urged that the court erred in refusing to discharge the jury upon request of the defendant, when one of the prospective jurors on his voir dire examination made this statement, "Mr. Crossland, where there is good deal of smoke you must always get a little fire." It appears that defendant did not challenge the juror for cause, but asked that the members of the panel be discharged on account of this statement. We think the court properly refused the request to discharge the panel.

It is also insisted that the verdict of the jury is not sustained by sufficient evidence, and that all the evidence offered by the state was incompetent, because said evidence was obtained through an illegal search warrant.

The undisputed facts are that on the day alleged the sheriff, together with other officers, raided defendant's place and made a search for intoxicating liquor, finding 23 cases of whisky; that defendant's place was a place of public resort.

R. D. Sanford, sheriff, testified that with his deputy, Jack Quast, Reese Moran, chief of police, Vic Ellis, and Frank Jones policemen, and J. E. Brent, federal enforcement officer, he visited defendant's place about a mile out of the city on the Peoria street road; that Mr. Brentz, who had a search warrant, asked him to assist him in executing the same; that under the driveway of the barn they found a plant covered with dirt, which contained 23 cases of red whisky; that defendant was there present with the officers, and made the statement that "it had been there for several months, and if he had any idea that we were coming out we would not have found it, that it was about a $3,000 loss." Vic Ellis, Jack Quast, and W. F. Jones testified, in substance, to the same facts as did Sheriff Sanford.

At the close of the state's evidence there was a motion by the defendant for a directed verdict of acquittal, which motion was denied. The defendant did not testify.

It is urged in the brief that—

"The state should have been required by the court to produce the search warrant, if any, the officers had, before allowing any other evidence to be introduced, in order that defendant might avail himself of any defect therein, in case it was produced, and that the testimony of Sheriff Sanford that Brentz had a search warrant was

secondary evidence, and should not have been admitted as a basis to vitalize the other proof in the case."

No authority is cited to support this contention, and, in view of the fact that the undisputed proof is that defendant made no objection at the time to the execution of the search warrant, and in fact admitted his ownership of the liquors seized, the contention made is without merit.

Upon a careful examination of the whole record we are of the opinion that the substantial rights of the defendant have not been prejudiced by any adverse ruling made by the court, and finding no prejudicial error, the judgment appealed from will be affirmed.

BESSEY, P. J., and EDWARDS, J., concur.